# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| HARD SURFACES SOLUTIONS, LLC, | ) |
| Plaintiff, | ) |
| v. | ) No. 3:21-cv-00137 |
| CONSTRUCTION MANAGEMENT, INC., and WILLIAM COULSON, individually, | ) |
| Defendants. | ) |

## MEMORANDUM OPINION

Defendants' Motion to Dismiss (Doc. No. 14) challenging the validity of Plaintiff's claims for breach of contract, violation of Tennessee's Prompt Pay Act, the Tennessee Consumer Protection Act, and misrepresentation/fraud has led to 65 pages of briefing. Plaintiff has also filed a Motion to File a Sur-Reply (Doc. No. 30) that would add another 5 pages, to which Defendants have filed a response in opposition (Doc. No. 31). The sheer length and extent of the briefing indicates that the majority of issues are not as clear-cut as Defendants would have it. And because–with the exception of the claims sounding in fraud–Defendants' arguments are better addressed in the context of summary judgment after the record has been developed, the Court finds it unnecessary to dive too deeply into the parties' arguments at this time.

**A. Background**

Briefly, the Complaint alleges the following. William Coulson is president of Construction Management Inc. ("CMI"). In August 2016, CMI entered into a cost-plus construction contract with Mt. Juliet Hospitality, LLC (the "Project Owner") whereby CMI would serve as the prime contractor for the construction of a 100-unit Staybridge Suites Hotel. Thereafter, on September 22, 2017, CMI

entered into a written subcontract agreement (the "Subcontract") with Hard Surfaces Solutions, LLC ("Hard Surfaces") to install vanity tops, window sills, counterstops, tub and shower surrounds and accessories, and shower door enclosures in the hotel. The Subcontract was modified over time, raising the cost of work performed by Hard Surfaces from $105,969 to $150,054.

Hard Surfaces claims to have performed its obligations under the Subcontract and submitted six pay applications to CMI. For the first four pay applications, CMI withheld a percentage as retainage, but did not place those retained funds into a separate, interest-bearing escrow account. Further, CMI did not pay the last two pay applications submitted by Hard Surfaces. Hard Surfaces claims it is owed $42,152.57 for labor and goods. It also seeks statutory penalties in the amount of $300 per day under the Prompt Pay Act that, according to Plaintiff, is already north of $300,000.

## B. **Breach of Contract and Prompt Pay Act Claims**

Defendants argue that Plaintiff's breach of contract and Prompt Pay Act claims fail as a matter of law because of the Subcontract's pay-when-paid clause. In relevant part, that clause provides:

> It is an express condition precedent to payment by Contractor to Subcontractor that Contractor receive payment for Subcontractor's work as due from Owner; and Contractor shall not be required to make payments to Subcontractor as called for herein until the actual receipt of payment from Owner, and then only to the extent of such payment. The Subcontractor expressly contemplates that payments to him are contingent upon the Contractor's [sic] receiving payment from the Owner, the Subcontractor expressly agreeing to accept the risk that he will not be paid for work performed by him [in] the event that the Contractor, for whatever reason, is not paid by the Owner for such work.

(Doc. No. 14-3, Hard Surfaces Contract ¶ 6.2). Because Plaintiff voluntarily accepted the risk of a no-pay, or slow-play, Defendants insist dismissal of Counts I and II of the Complaint is required.

It is true, as Defendants point out, that a "'court will not create or rewrite a contract simply

2

because its terms are too harsh or because one of the parties was unwise in agreeing to them.'" Snyder v. First Tennessee Bank, N.A., 450 S.W.3d 515, 518 (Tenn. Ct. App. 2014) (quoting Towe Iron Works, Inc. v. Towe, 243 S.W.3d 562, 569 (Tenn. Ct. App. 2007)). But this "often-cited principle" of Tennessee law comes with a caveat – "the absence of mistake or fraud." Id. It is also hornbook law in Tennessee that "there is implied in every contract of good faith in its performance and enforcement, and a person is presumed to know the law." Dick Broad. Co. of Tennessee v. Oak Ridge FM, Inc., 395 S.W.3d 653, 660 (Tenn. 2013) (citation omitted).

Plaintiff alleges that it fully performed all of its obligations under the Subcontract in a workmanlike manner, and that it properly billed for that work, but has not been paid in full. While Defendants claim that it has not made those payments because it has not been paid for Hard Surfaces' work by the Project Owner, whether that is true or not cannot be determined from the face of the Complaint.[1]

Regardless, the essence of Plaintiff's claim is that, if Defendants were not paid by the Project Owner, this was because CMI intentionally and fraudulently altered its Tennessee contractor's licence by holding itself out to be a licensed general contractor with an unlimited license in Tennessee. (Complaint ¶ 2.) According to the allegations in the Complaint, during the time frame covered by this litigation, CMI was issued a special hardship license by the Tennessee Department

---

[1] Defendants insists that Plaintiff's own Complaint shows that CMI was not paid by the Project Owner because, in Paragraph 40, "based on information and belief," Plaintiff alleges that the Project Owner "did not pay CMI because of CMI's fraudulent and illegal activities[.]" (Doc. No. 1, Complaint ¶ 40). This hardly established that CMI was not eventually paid, particularly because the Court must construe "the complaint in the light most favorable to the plaintiff, accept all well-pleaded factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff." Crosby v. Univ. of Kentucky, 863 F.3d 545, 549 (6th Cir. 2017) (citing Courtright v. City of Battle Creek, 839 F.3d 513, 518 (6th Cir. 2016)). One reasonable inference to be drawn from the allegations is that CMI claimed non-payment from the Project Owner as an "excuse" not to pay Plaintiff, whether true or not. (See Complaint ¶ 76).

3

of Commerce with a monetary limit of only $284,200. Nevertheless, "CMI and Coulson and/or their principals and agents and/or someone acting under their authority and/or power, fraudulently altered the monetary limit on CMI's license #68836 from a limitation of $284,200.00 to an 'unlimited' monetary amount license in order to illegally pull permits for hotel projects across the State of Tennessee[.]" (Id. ¶ 24). Plaintiff's theory, which the Court cannot say is implausible for purposes of Rule 12(b)(6), is that if Defendants were not paid by the Project Owner, this was the result of their own machination, and Plaintiff should not be held to account for Defendants' wrongdoing. See German v. Ford, 300 S.W.3d 692, 706 (Tenn. Ct. App. 2009) (stating that because every contract imposes a duty of good faith and fair dealing, "every contract includes an implied condition that one party will not prevent performance by the other party"); Moody Realty Co. v. Huestis, 237 S.W.3d 666, 678 (Tenn. Ct. App. 2007) ("Where parties to a bilateral contract are obligated to carry out certain tasks that are necessary for the realization of benefits under the agreement, each party has the right to proceed free of hindrance by the other party.").

Contrary to Defendants' contention, this case is not "similar" to Jones Masonry, Inc. v. West American, 768 S.W.2d 686 (Tenn. Ct. App.1988) or Davis Constr., Inc. v. Lauren Enginrs, No. E2017-00844-COA-R3-CV, 2019 WL 1300936 (Tenn. Ct. App. March 20, 2019), either procedurally or substantively. Procedurally, Jones was decided in the context of summary judgment while Davis was decided after a bench trial, not on a motion to dismiss. Substantively, neither involved the claim that the prime contractor's alleged fraud led to the withholding of payment by the project owner.

Defendants raise an additional ground for dismissal of the Prompt Pay Act claim. The statute (which has since been amended) provided that "[w]henever, in any contract for the improvement

4

of real property, a certain amount or percentage of the contract price is retained, that retained amount must be deposited in a separate, interest-bearing, escrow account with a third party which must be established upon the withholding of any retainage." Tenn. Code Ann. § 66-34-104(a) (2017). The statute also provided that the failure to properly escrow retained funds could result in a $300 a day penalty, and that attorney's fees could be awarded for the bad faith failure to comply with the terms of the statute.

Defendants insist that they are not liable because both the Prime Contract and the Subcontract indicate that the Owner, not CMI, was the party responsible for withholding retainage. That is, "the plain language of both the Subcontract and Prime Contract shows that CMI was never a party that was to withhold retainage owed to Hard Surfaces." (Doc. No. 14-1 at 10). Maybe so, but the allegations in the Complaint assert that CMI did withhold retainage. In fact, the Complaint specifically alleges that "CMI withheld $7,647.97 as Retainage from Hard Surfaces, with the first portion of the Retainage amount beginning withheld on or about July 13, 2018." (Complaint ¶ 33). Whether that is correct only discovery will show, but for now the Court must accept the allegations as true.

Neither the breach of contract claim set forth in Count I, nor the Prompt Pay Act claim set forth in Count II will be dismissed on the pleadings.

### C. Fraud/Misrepresentation and TCPA Claims

Defendants argue that Plaintiff's common law fraud/misrepresentation and TCPA claims must be dismissed for failure to meet the pleading requirements of Rule 9 of the Federal Rules of Civil Procedure, and because Plaintiffs cannot show proximate cause for the damages it allegedly suffered. They also argue that Plaintiff's TCPA claim is untimely. Because this Court agrees with

the first argument, it need not reach the other two.

Rule 9 requires that "in alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake," although "[m]alice, intent, knowledge, and other conditions of a person's state of mind may be alleged generally." Fed. Rule Civ. P. 9(b). However, "Rule 9(b) is not to be read in isolation, but is to be interpreted in conjunction with Federal Rule of Civil Procedure 8," which requires only "a short and plain statement of the claim" made by "simple, concise, and direct allegations." United States *ex rel*. Bledsoe v. Cmty. Health Sys., Inc., 501 F.3d 493, 503 (6th Cir. 2007) (citing Michaels Bldg. Co. v. Ameritrust Co., N.A., 848 F.2d 674, 679 (6th Cir.1988)). Still, "[i]n complying with Rule 9(b), a plaintiff, at a minimum, must 'allege the time, place, and content of the alleged misrepresentation on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud.'" Id. (quoting Coffey v. Foamex L.P., 2 F.3d 157, 161–62 (6th Cir.1993)). This is true for both common law fraud and TCPA claims. See Amirazodi v. Capella Educ. Co., No. 3:21-CV-00074, 2021 WL 1946643, at *5 (M.D. Tenn. May 14, 2021) ("Fraud and TCPA claims in federal court must also satisfy the "particularity" requirements of Federal Rule of Civil Procedure 9(b)."); Harding v. BMW of N. Am., LLC, No. 3:20-CV-00061, 2020 WL 5039439, at *2 (M.D. Tenn. Aug. 26, 2020) (stating that "[d]istrict courts in Tennessee have held that Rule 9(b) applies to TCPA claims" and collecting cases); Bridgestone Am.'s, Inc. v. Int'l Bus. Machines Corp., 172 F. Supp. 3d 1007, 1019 (M.D. Tenn. 2016) ("Defendant is correct in that TCPA claims are subject to the higher pleading standard articulated in Rule 9(b).").

Even construed in the light most favorable to Plaintiff, accepting the factual allegations as true, and drawing all reasonable inferences in its favor, the Complaint does not plead fraud with any

6

particularity. Indeed, in its reply brief, Plaintiff cobbles together a smorgasbord of facts drawn from a number of paragraphs within the Complaint in an effort to show the basis for its fraud and TCPA claims. Plaintiff alleges: (1) "CMI, its principals, agents, and Coulson committed fraud when they altered the general contractor's license; (2) "[a]fter the issuance of the license in 2015, CMI and Coulson and/or their principals and agents and/or someone acting under their authority and/or power, fraudulently altered the monetary limit on CMI's license #68836 from a limitation of $284,200.00 to an 'unlimited' monetary amount license"; (3) "[u]pon information and belief, the Owner did not pay CMI because of CMI's fraudulent and illegal activities related to the falsification of its license, and the Owner's refusal to pay CMI has nothing to do with Hard Surfaces' work"; (4) "[d]espite CMI's license being suspended, CMI continued to perform work on the Project and continued to induce Hard Surfaces to perform work on the Project"; (5) "[w]hile CMI continued work on the Project, it never advised Hard Surfaces that its license had been suspended"; (5) "CMI was not paid by the Owner of the Project due to CMI's fraudulent alteration to its Tennessee contractor's license"; (6) "Coulson and/or someone acting under his authority and control, individually and/or on behalf of CMI, made certain representations of present or past material facts, specifically regarding CMI's licensure"; (7) "Coulson and/or someone acting under his authority and control, individually and/or on behalf of CMI, either knew that the representations were false, or made the representations recklessly without knowing whether they were true or false"; (8) "Hard Surfaces has sustained monetary damages as a result of CMI's and Coulson's fraudulent representations"; and (9) "Coulson and his agents and/or someone acting under his authority and control, individually and/or through CMI, and its agents and/or someone acting under its authority and control represented to Hard Surfaces that CMI was qualified to enter into the Subcontract for work on the Project when CMI was

7

not qualified to do so." (Doc. No. 21 at 25) (internal citations omitted). This seems like a lot, but consciously absent is any specific indication of who made what specific false statements to Hard Surfaces, and when they were allegedly made.

The facts alleged here are similar to those found to be insufficient by Judge Trauger in Construction Management Inc. v. Expo Hospitality, LLC, No. 3:19-cv-00298, 2019 WL 2917991, at *1 (M.D. Tenn. July 8, 2019). There, Expo filed a counterclaim for fraud against CMI based upon the same falsification regarding CMI's license to perform as a contractor without a monetary limit. In rejecting the fraud claim, Judge Trauger noted the six elements of a fraud claim under Tennessee law,[2] and then wrote:

> In order to effectively plead any of those elements, a plaintiff must identify, at least generally, "who [is alleged to have] made particular misrepresentations and when they were made." Hoover v. Langston Equip. Assocs., Inc., 958 F.2d 742, 745 (6th Cir. 1992). Without a clear identification of the allegedly false statements and their speakers, one cannot effectively assert the elements of falsity, materiality, knowledge, or reasonableness of reliance. Without at least some sense of the timing of the statements—and, therefore, their context within the parties' course of business—one cannot effectively assert materiality, reliance, or damages. Expo, however, describes CMI's scheme only generally, with very little detail regarding specific misrepresentations made to CMI [Expo?] itself, as opposed to, for example, false statements made to permitting authorities. While Expo does allege that CMI misrepresented the reasons for its permit delay, Expo does not explain who said what, when it was said, or how Expo relied on the statement. Expo, moreover, cannot merely point to the altered letter as the basis for its claims, because it appears that the purpose of the letter was to deceive permitting offices, not Expo. Expo is required to describe, with particularity, how it was defrauded–for example, by describing specific misrepresentations, by and to identifiable people, about the scope of CMI's licensure.

---

[2] Those elements are: "(1) that [the defendant] made a representation of an existing or past fact; (2) that the representation was false when it was made; (3) that the representation involved a material fact; (4) that [the defendant] made the representation recklessly, with knowledge that it was false, or without belief that the representation was true; (5) that the [plaintiff] reasonably relied on the representation; and (6) that [the plaintiff was] damaged by relying on the representation." Davis v. McGuigan, 325 S.W.3d 149, 154 (Tenn. 2010)

8

Id. at *5.[3]

Plaintiff's fraud/misrepresentation and TCPA claims contains many of the same deficiencies. There is no clear identification of what alleged misrepresentation was made by which particular defendant, and the alleged scheme is only defined in the vaguest of terms. Just as in Expo, what Plaintiff has essentially done is point to the altered letter as the basis for its fraud claim but, as Judge Trauger explained, the letter was intended to deceive the permitting officers at the State of Tennessee. If, in fact, CMI made specific statements about its license status to Hard Surface (particularly when it was allegedly persuaded to continue working notwithstanding CMI's suspension), Plaintiff should have identified those specific statements, when they were made, and to whom they were made. The failure to do so means that the fraud and TCPA claims alleged in Counts III and IV will be dismissed.

In so deciding, the Court recognizes that it is an unfair or deceptive act under Tennessee law to "represent[] that a person is a licensed contractor when such person has not been licensed as required" or to "act[] in the capacity of a contractor . . . while not licensed[.]" Tenn. Code Ann. § 47-18-104(35). While it has been stated that "a contractor who holds itself out as a properly licensed contractor who is not properly licensed commits a *per se* violation of the TCPA," In re Heinz, No. 10-52964, 2012 WL 137563, at *13 (Bankr. E.D. Tenn. Jan. 18, 2012), "this does not mean that Plaintiffs necessarily are entitled to the remedies that they seek." Gary R. Prince Revocable Tr. v. Blackwell, 735 F. Supp. 2d 804, 812 (M.D. Tenn. 2010). Instead, as already noted, TCPA claims are subject to the heightened pleading standards of Rule 9(b). In fact, in Expo, Judge Trauger

---

[3] Expo later filed an amended complaint that cured the deficiencies with respect to two of the three counter-defendants.

initially dismissed a TCPA claim against CMI because that claim arose "out of the same allegations at issue with regard to [Expo's] intentional misrepresentation claims." Expo Hospitality, LLC, 2019 WL 2917991, at *1.

The same is true here. After incorporating by reference the prior allegations in the complaint (including the misrepresentation/fraud claim), Plaintiff asserts that someone on behalf of CMI acted unfairly in violation of the TCPA by representing to Hard Surfaces that CMI "was qualified to enter into the Subcontract for work on the Project when CMI was not qualified to do so." (Complaint ¶ 72). That "someone," however is not identified other than by a reference "Coulson and his agents and/or someone acting under his authority and control, individually and/or through CMI, and its agents and/or someone acting under its authority and control," (id.), nor is the time frame, or the person at Hard Surfaces to whom the statement was allegedly made, identified.

**E. Coulson's Personal Liability**

Count V of the Complaint seeks to hold Coulson personally liable because he allegedly executed a personal guaranty agreement wherein he "guarantee[d] all debts, liabilities and obligations of CMI that arise out of its contracting activities in the State of Tennessee." (Id. ¶ 84). Defendants move to dismiss this Count on the grounds that it does not state a cause of action under Tennessee law, and because all of Plaintiff's claims are otherwise subject to dismissal.

The Court has found that Plaintiff states plausible breach of contract and Prompt Payment Act claims against CMI. Moreover, enforcement of a personal guarantee can be brought by way of a breach of contract claim. See Gen. Produce LLC v. Farm Fresh Fruits & Vegetables, LLC, No. 118CV00246HSMSKL, 2019 WL 2537655, at *6 (E.D. Tenn. Apr. 30, 2019); Advanced Photographic Sols., LLC v. Nat'l Studios, Inc., 352 S.W.3d 431, 443 (Tenn. Ct. App. 2011). That

is, "[i]n order to bring a breach of personal guaranty, a plaintiff must demonstrate '(1) the existence of an enforceable contract,' (2) the breach of the contract, and (3) damages resulting from the breach. BP Prod. N. Am. Inc. v. Premier Oil Co., LLC, No. 2:11-CV-2162-JPM-CGC, 2013 WL 12251287, at *4 (W.D. Tenn. Dec. 26, 2013) (citation omitted); see also C & W Acquisition, LLC v. Oggs, 230 S.W.3d 671, 676-77 (Tenn. Ct. App. 2007)) (applying the elements of a breach of contract to a breach of a personal guaranty). Of course, without having the personal guaranty before it, the Court does not know if it enures to Plaintiff's benefits. That may ultimately be a grounds for dismissal, but Defendants have not made the argument and the grounds they do raise do not warrant dismissal at this time.

**F. Conclusion**

On the basis of the foregoing, Defendants' Motion to Dismiss will be granted with respect to Plaintiff's intentional misrepresentation/fraud and TCPA claims, but denied with respect to all other claims.

Prior to closing, an observation is in order. The Case Management Order provides that the parties shall attempt to resolve the case "through direct negotiation" by August 24, 2021, and that, if unsuccessful, a "second attempt will be [made] through either mediation or [a] judicial settlement conference" by November 17, 2021. (Doc. No. 26 at 5-6). Now that the claims have been pared down, the parties should explore the possibility of resolving the case sooner rather than later, particularly since Plaintiff's actual (as opposed to statutory) damages are little more than $40,000, which is an amount that can be eaten up by attorney's fees in short order. The Court defers to the sound discretion of Magistrate Judge Newbern to insure that this case comports with the command in Rule 1 of the Federal Rules of Civil Procedure.

An appropriate Order will enter.

_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE